**Elmo NELMS et al., Appellants,**

**v.**

**GULF COAST STATE BANK, Appellee.**

**No. 16381.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Nov. 14, 1974.

Rehearing Denied Dec. 12, 1974.

———◆———

Dearman, Myers & Brown, W. Dan Myers, Houston (Claude B. Masters, Houston, of counsel), for appellants.

McCall & McCall, LeRoy McCall, Hamshire, for appellee.

EVANS, Justice.

The principal question in this case is whether a lender's security interest in a motor vehicle, evidenced by lien notation recorded on the face of the title certificate, is superior to a subsequent mechanic's lien for automobile repairs.

The automobile in question, a 1971 Chevrolet, was purchased by Nelms from Beaumont Motor Company. Its installment contract and security agreement were subsequently assigned to Gulf Coast State Bank and its security interest was duly noted on the face of the title certificate. Nelms' automobile was thereafter damaged and Nelms took it to Buchanan who agreed to make repairs for the sum of $1160.63. When the repair work was completed, Buchanan notified Nelms to come for his automobile but Nelms never picked up the car nor paid Buchanan's repair bill. Gulf Coast State Bank, to whom Nelms was in arrears in his payments, then located the automobile at Buchanan's repair shop and sought possession. Upon Buchanan's refusal to turn over possession, Gulf Coast State Bank filed suit for recovery of the balance due on the note ($1855.54) and for foreclosure of the security interest. It also sued out writ of sequestration and thereafter replevied the automobile from the sher-iff. Buchanan filed cross-action against Gulf Coast State Bank seeking to recover the reasonable value of the repairs plus storage charges. After a non-jury trial, the trial court entered judgment for Gulf Coast State Bank against Nelms for the amount of the balance due on the note plus interest and attorney's fees and held that Buchanan had a valid but inferior lien for the value of repairs and other charges plus reasonable attorney's fees. The court ordered the automobile sold and the proceeds of sale applied to the payment of the amounts due the respective lienholders, in the order of their determined priority, and that any balance remaining after the satisfaction of both such liens should be paid to Nelms. The court entered a take nothing judgment on Buchanan's cross-action against Gulf Coast State Bank. From this judgment Buchanan appeals.

The lien given mechanics, artisans and materialmen exists by reason of Article 16, Section 37 of the Texas Constitution, Vernon's St.Ann., and by Article 5503, Vernon's Tex.Ann.Rev.Civ.Stat., which provides for its enforcement.

Prior to the enactment of the Texas Uniform Commercial Code, the Texas Certificate of Title Act (Article 1436–1, Vernon's Ann.Texas Penal Code), provided the exclusive means for perfecting a security interest in a motor vehicle in this State. Under that law the priority of liens in motor vehicles was set forth as follows:

"Sec. 43. All liens on motor vehicles shall take priority according to the order of time the same are recorded on the receipt or certificate of title of all such recordings to be made by the Department.

"Sec. 44. No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts

and certificates of title on said motor vehicle, as provided in this Act.

"Sec. 45. Exposure for sale of any motor vehicle by the owner thereof with the knowledge or consent of any mortgagee shall not affect the rights of any mortgagee as against all third parties.

"Sec. 46. Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor in so far as concerns the motor vehicle."

Under the law as it then existed, a conditional sales lien noted on the certificate of title was held superior to a subsequently established mechanic's lien. Motor Truck Sales Co. v. Hauck, 388 S.W.2d 214 (Tex. Civ.App.—San Antonio 1965, writ ref. n. r. e.).

The Texas Uniform Commercial Code, which became effective July 1, 1966 and was re-enacted in 1967 as a part of the Texas Business and Commerce Code, did not repeal except by implication Sections 43 through 46 of the Texas Certificate of Title Act. The fact that these sections were not expressly repealed resulted in predicted uncertainty as to the legislature's intent with respect to the priority of liens in motor vehicles. Ruud, 33 Tex. Bar Journal 11, pp. 968–69 (December, 1970).

Section 9.310 of the Texas Business and Commerce Code, V.T.C.A., (Tex.U.C.C. 1967) provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

In G.M.C. Superior Trucks, Inc. v. Irving Bank & Trust Company, 463 S.W.2d 274 (Tex.Civ.App.—Waco, January, 1971, no writ), the court was concerned with a priority situation, similar to that in the case at bar, which had occurred after the effective date of Section 9.310 of the Texas Business and Commerce Code but prior to express repeal of Sections 43 through 46 of the Certificate of Title Act. The court held that the Texas Business and Commerce Code and the Certificate of Title Act were in para materia and in construing the statutes together, determined that the special provisions of Section 43 of the Certificate of Title Act should be given precedence over the general provisions of Section 9.310 and that the bank's security interest was, therefore, superior to the subsequently established artisan's lien.

In April, 1971 the legislature amended the Certificate of Title Act expressly repealing, among others, Sections 43 through 46. (Article 6687–1, Tex.Rev.Civ.Stat.). In this amendatory Act it also added an entirely new provision as follows:

"Section 65. In case of any conflict between this Act and the Business and Commerce Code, Chapters 1 through 9, the provisions of the Business and Commerce Code control."

■ In the emergency clause of the 1971 amendment to the Certificate of Title Act, the legislature declared that the amendment was necessary "to remove doubt and . . . to make consistent the provisions and terminology of the Certificate of Title Act with the Texas Uniform Commercial Code" explaining that the provisions of the Certificate of Title Act which had been repealed by implication on the adoption of the Uniform Commercial Code had not been expressly repealed. See Acts 1971, 62nd Leg., p. 896, ch. 123, § 8. In arriving at the legislature's intent, it is our duty to consider the entire Act including the emergency clause. Anderson v. Penix, 138 Tex. 596, 161 S.W.2d 455 (1942).

■ We are also bound to give effect to express declarations of legislative intent. Texas Bank & Trust Co. v. Austin, 115

Tex. 201, 280 S.W. 161 (1926). In the 1971 amendment to the Certificate of Title Act, the legislature expressly declared that in case of conflict between that Act and the Business and Commerce Code, chapters 1 through 9, the provisions of the Code would control. By its amendatory Act, the legislature must be presumed to have intended some amendment of existing law. American Indemnity Co. v. Noble, 235 S.W. 867 (Tex.Com.App.1921); American Surety Company of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715 (1931). When an entirely new section has been introduced into a law, the new section must be construed in the light of the preexisting law, as it stands after the amendment, and the new section, together with all unrepealed sections of the preexisting law, should be considered as a harmonious whole. Shipley v. Floydada Independent School Dist., 250 S.W. 159 (Tex.Com.App.1923).

A review of the authorities in other jurisdictions indicates differing results dependent upon the effect given the language of the particular statutes. See 30 A.L.R. 3d, pp. 89–92, Sec. 29. The Ohio Supreme Court has held that the legislature of that state did not, by the enactment of the Uniform Commercial Code, intend to alter the existing law of priority. Commonwealth Loan Company v. Berry, 2 Ohio St.2d 169, 207 N.E.2d 545; Snyder v. Ryan, 2 Ohio St.2d 171, 207 N.E.2d 547. In Manufacturers' Acceptance Corp. v. Gibson, 220 Tenn. 654, 422 S.W.2d 435 (1967), however, the Tennessee Supreme Court construed Section 9.310 as evidencing legislative intent that a subsequent artisan's lien should be held subordinate only when the statute expressly declares it to be so. Rejecting the view expressed by the Ohio decisions, the Tennessee Supreme Court (at page 437) said:

"It is obvious that the draftsmen of this section adopted the view that claims arising from work intended to enhance or preserve the value of the collateral would take priority over an earlier security interest, even though perfected, and even though the artisan's services or materials were furnished without the knowledge or approval of the secured party. See Spivack, Secured Transactions Practice Handbook 115 (1963)."

■ In view of the repeal of Sections 43 through 46 of the Texas Certificate of Title Act, and the declaration of the legislature in Section 65 of the amended Act that in all cases of conflict the provisions of Chapters 1 through 9 of the Business and Commerce Code shall control, we believe the legislature intended that the provisions of Section 9.310 of the Business and Commerce Code should be given controlling effect over any conflicting provisions in the Certificate of Title Act as to the priority of liens in motor vehicles. Section 9.310 clearly establishes the priority of possessory liens of mechanics and materialmen over perfected security interests unless the statute "expressly provides otherwise." We find no existing statute, including Article 5506, Tex.Rev.Civ.Stat., which, in our opinion, "expressly provides otherwise."

■ We hold that the mechanic's lien of Buchanan was superior to the security interest of Gulf Coast State Bank and that the trial court erred in determining the bank's lien was entitled to priority. Since the trial court has not had full opportunity to pass upon Buchanan's cross-action against Gulf Coast State Bank, the cause is reversed and remanded.